Case 1:24-cv-0391-WMR-JSA        Filed 07/31/24

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 31 2024

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISON

| | |
|---|---|
| Justin Elekwuma, | Civil Action No. 1:24cv- 0309(WMR)(JSA) |
| Plaintiff | |
| v. | |
| Delta Air Lines, INC., | |
| Defendant | |

## MOTION OF OPPOSITION TO MOTION TO DISMISS

I, Justin Elekwuma (Plaintiff), hereby submit a Motion of Opposition to the Motion to Dismiss as presented by Delta Air Lines INC (Defendant), on 7/19/2023. This motion is submitted in accordance with the Whistleblower Protection Act of 1989, which prohibits retaliation against protected actions. Also, this motion is submitted in accordance with the 7th Amendment of the United States Constitution, which is the right to a jury trial in federal court.

Dated:        July 31, 2024

1

## REASON FOR OPPOSITION

Defendant failed to respond to the Affidavit of Truth that was written and notarized on 5/03/2024 and mailed via certified mail out on 5/07/2024 within the specified time which is 10 days. Defendant then fails to respond to the Affidavit of Default that was written, notarized and mailed via certified mail on 5/21/2024. Neither Affidavit of Truth nor Affidavit of Default was not returned to sender nor responded to. Therefore, Defendant boldly and arrogantly ignored.

## SUMMARY

On 6/10/2024 Plaintiff filled a complaint with the Gwinnet County Superior Court, and Defendant was served on 6/11/2024. While Defendant claims that Georgia state law does not recognize a claim for discrimination against a private employer based on race, Guilford v. MarketStar Corp., 1:08-CV-0336-CC-SSC, 2009 WL 10664954, at *9 (N.D. Ga. Jan. 30, 2009), report and recommendation adopted, No. 1:08-CV-0336-CC-SSC, 2009 WL 10664951 (N.D. Ga. Feb. 19, 2009), the Plaintiff who is of Nigerian decent did experienced several actions that discriminated against his race and age and created a hostile work environment while working for the Defendant.

Although there is no claim on age discrimination in the current complaint, The Plaintiff is currently 26 years old, while working for the Defendant was 25 years old, and could not file an age discrimination claim with the EEOC because he is under 40 years old. Plaintiff made attempts to call the EEOC to file a complaint while suspended from 8/2/2023 to 9/1/2023, but every time he was able to get in contact, he was transferred to the Department of Labor because my complaint did not meet any of the categories for a discrimination claim with the EEOC. Plaintiff claims once transferred to the Department of Labor, no one would answer.

Therefore, the Plaintiff exercised all his options and had no choice but to rely on his appeal with Terrance Rice, who is the Defendant's Equal Opportunity Committee's manager, that happened on 10/10/2023.

During the appeal, Rice had absolutely no information on the appeal he was conducting with the Plaintiff. The only questions he had asked me was, "What was the threat that you had said?". The Plaintiff responded, "He does not know because he never said a threat and when he asked both his supervisor at the moment Nikya Cunningham, and Willma Abreu, the HR representative who Nikya Cunningham referred after notifying the Plaintiff of his termination on 9/5/2023, they both said, "that information cannot be discussed."". The alleged notes that are titled "Statements asked to Terrence Rice during my EEOC appeal" are questions formulated by the Plaintiff to ask Terrance Rice during his appeal hoping to get an answer. (*Id.* at p.7) The only answer received from Mr. Rice was, "I have no idea", thus overall questioning the motive of the appeal with the Defendant's Equal Opportunity Committee's manager Terrance Rice. At the end of the appeal, it was stated by Rice, "You will receive results in 30 days from the appeal date which is 10/10/2023". Rice also stated, "Do not call back, and someone will reach out to you".

After Rice failed to respond or have someone respond to the Plaintiff in the allotted time given, Plaintiff decided to go up the chain of command and email Melissa Seppings on 11/16/2023. Seppings is currently the Managing Director of the Equal Opportunity and Compliance section at Delta Air Lines. It was then Rice responds back to me on 12/4/2023, which is 8 days, excluding weekends and holidays, and 25 days, including weekends and holidays, after the deadline he had set. Rice states that my termination was appropriate after not giving me any reason why the Plaintiff was terminated in the first place. As stated above in

paragraph 3, sentence 2 of the summary section, Rice asked the Plaintiff, "What was the threat you had said?", Even though the Plaintiff never made a threat in the first place.

## ARGUEMNET

### 1. Plaintiff was assaulted by supervisor for assuming leadership

(See Dkt. No 1-1, at Claim 2) On or about July 12, 2023, Stephen Charles Operation service manager, was having a briefing with Affiant and other employees, Stephen Charles told a staff member to lead, but staff did not want to lead. Affiant stated that he would lead. Stephen Charles poked Affiant in the chest then Affiant stated, "you should cut your fingernails." Stephan Charles Stated to Affiant; "You're soft now." Stephen Charles had no right to put his hands on the Plaintiff for trying to assume leadership after the other coworker refused to lead. Especially with it being his responsibility to lead the stretch and flex period and he puts his duty on to a subordinate.

Overall, Stephen Charles blatantly violated the Defendant's workplace violence policy, while Plaintiff was suspended without any paperwork, and then terminated for allegedly violating the Defendant's workplace violence policy but has not been shown any proof of violating the policy as of yet. Plaintiff would've called the police immediately but was afraid that he would be fired for taking that protected action. Plaintiff also would've reported the incident to John E. Moore as soon as it happened, but the information on who John E. Moore was with withheld from the Plaintiff. Plaintiff had no choice but to wait until around 7/18/2023, when he found out who John E. Moore was. Once the Plaintiff discovered the identity of John E. Moore, Plaintiff reported the incident. (See Dkt. No 1-1, at Claim 3) John E. Moore stated, " I'm glad

you showed restraint and did not strike Stephen Charles." The Affiant has never received a copy of a complaint against him. Once terminated a police report was made in regard to the situation.

### 2. Plaintiff experienced retaliation after taking several protected actions

(See Dkt. No 1-1, at Claim 4) On or about July 18, 2023, during a meeting Stephen Charles made a comment, stating; "Nah Pimp, I took my truth serum." Affiant responded stating, "Pimp is derogatory", it should never be used in the workplace. Stephen Charles called Affiant into the office and asked Affiant if he had done anything to offend him. Stephen Charles said it three times first two times being calm and the third time being more aggressive. Affiant stated to Stephen Charles that he should restrain from saying things that do not need to be said in the workplace. Stephen Charles was not understanding and asked Affiant what he meant. Affiant once again stated that Pimp was an offensive term. Stephen Charles let Affiant know that he would look into it.

According to the Merriam-Webster English Dictionary, the word pimp is a criminal who is associated with, usually exerts control over, and lives off the earnings of one or more prostitutes, and a prostitute is a person who engages in sexual intercourse in exchange for pay. Knowing the nature of these two words, they should never be used in a work environment because the setting can turn into a hostile work environment for women. Especially with Stephen Charles being a power of authority and has subordinates who are female. Therefore, Plaintiff's action was justified. Stephen Charles showed an act of temporal proximity retaliation to the Plaintiff by telling the Plaintiff to report to his office in front of his coworkers in response to being told that he shouldn't be using derogatory language in front of his subordinates.

Failing to locate John E. Moore to report the incident that happened on 7/18/2023, a statement was sent to Kirk Pillner at 5:02 PM in regard to the situation that happened on

7/18/2023. Stephen Charles then comes to Plaintiff's assigned post, pier 32, which is located outside on the airfield, demanding that he ride back with him to his office. Plaintiff then got into his own personal work vehicle and meet him in his office. Once in his office, Stephen Charles started asked the Plaintiff, "What did you do after you left my office?". Plaintiff replied, "You are harassing me, and you need to leave me alone.". Charles tries to act stunned and replies, "What do you mean?". Plaintiff then replies, "I have met with your boss John E. Moore and reported to him that you poked me in my chest, and I reported to Kirk Pillner on how you harassed me in front of everyone in today's briefing. So, Stephen, please leave me alone.". Stephen Charles then replies, "I didn't poke you in your chest, I touched your chest with an open palm". Plaintiff then replies, "So why did I tell you that you should cut your fingernails? Why did you call me soft? Lastly, why are you putting your hands on me period?". Stephen Charles avoids the barrage of questions thrown at him and attempts to breach Plaintiff's confidentiality by stating "Back to the task at hand, you need to send me the statement that you sent to Kirk Pillner immediately.". Plaintiff then walks out of Stephen Charles Office and returned back to his assigned post.

    In retaliation to Plaintiff not sending Stephen Charles his statement that was written and sent to Kirk Pillner, on 7/19/2023, Stephen Charles came to Plaintiff's assigned post and yelled, "Justin! Come to my office right now!" While yelling this command Charles used hard motions to draw unnecessary attention. Once Plaintiff got into his office, he was also met by Carey Bacon, who is Stephen Charles's coworker. Stephen Charles then states to plaintiff, "As of today, you no longer work in E bag room. You must report to B bag room for the rest of your bid." Plaintiff then left the office and relocated to B bag room where here met Nikya Cunningham,

Eric O. Henry, and John E Moore. John E. Moore then told Plaintiff to send the statement that he wrote and sent to Kirk Pillner to him, even though John E. Moore was already cc'd.

In retaliation to Plaintiff not sending Stephen Charles the statement he sent to Kirk Pillner, Stephen Charles then writes a corrective action notice that is filled with false information on 7/26/2023 to an incident that happened and should've been reported by him on 7/18/2023. Not only did he fill the corrective action notice full of false information, but he did also not even file the corrective action on the day it was written which was 7/26/2023. The corrective action notice did contain contact information to the Defendant's Employee Assistance Program where the Plaintiff could've received confidential services such as counseling and therapy at no cost, but this information was withheld from the Plaintiff even after Charles made statements such as, "Justin, I want to see you succeed as a Delta Employee.", "Your success is important to me.", " Should you require assistance, I am here to help" , and " I am available to assist in any way possible". This act by Stephen Charles not only shows delayed retaliation by writing up a corrective action notice to an incident that happened on 7/18/2023 on 7/26/2023. He also withheld an important resource that the Defendant gives to all their employees to deal with difficulties while working for the Defendant. This negligent action that was taken by Stephen Charles is considered to be extremely unethical. Especially with the position that Stephen Charles holds.

(See Dkt. No 1-2, at Claim 10) On or about August 01, 2023, A complaint was filed against Affiant due to the alleged threat and Affiant was suspended for a month. With Nikya Cunningham not being at work to conduct the pre work briefing due to dealing with another issue, Plaintiff reported to the next person in command, Mark Moon, who was the person who briefed the 3:30 crew, of his concern of Mr. France coming into his face and violently yelling in

his face after parking the company work vehicle back to his assigned post. Mark Moon stated, "That he will talk to Mr. France about violently yelling in Plaintiff's face." After clocking out after an 8-hour shift, Mark Moon told Plaintiff, "Nikya Cunningham wants to see you in her office". Plaintiff then goes to Nikya Cunningham's office where her and Carey Bacon are present. Nikya Cunningham asked the Plaintiff, "Did you threaten Mr. France earlier today?". Plaintiff replies, "No, I did not. What is this threat that Mr. France stated I said?". Nikya Cunningham stated, "That cannot be discussed, and I need you to write a statement about what happened today.". Plaintiff responded, "Okay, I will type it up on my phone and send it via email.", Plaintiff then leaves the office heads to the company bus to head home because he had already clocked out. Nikya Cunningham then text Plaintiff's phone on 8/1/2023 @11:48pm saying, "Hey, where did you go?". Nikya Cunningham then calls Plaintiff's phone telling him that he needs to get off the bus, walk back on the airfield, and return to her office. Plaintiff then walks back on the airfield and makes it back to Nikya Cunningham office on 8/2/2023 around 12:10am. On 8/2/2023 @12:12AM, Carey Bacon then puts a corrective action notice in the Plaintiff's file that was written by Stephen Charles on 7/26/2023 on an incident that happened on 7/18/2023.

    There is no reason that Carey Bacon should have been involved in this situation because he works in E bag room the location that the Plaintiff no longer work in, and this situation occurred in B bag room. Carey Bacon also had no reason to put a corrective action in the Plaintiff's file that was written by another co-worker of his. Especially since it was written on 7/26/2023 by Stephen Charles on an incident that happened on and should've been reported on 7/18/2023, which was a day that Carey Bacon was not even at work. With Carey Bacon submitting the corrective action notice that Stephen Charles had falsely written, he is claiming

that he had witnessed the false actions that Stephen Charles wrote in the corrective action notice on 7/26/2023 about the incident that happened on 7/18/2023. With Carey Bacon not even being at work on 7/18/2023, but submitting a corrective action notice 8 days after the corrective action notice was written by another coworker oh his, and 15 days after the actual incident happened and should've been reported, he is officially considered a false witness in this situation, and that should make Carey Bacon's submission of the corrective action notice invalid. Thus, showing that Carey Bacon was papering the Plaintiff's file for reasons unknown.

Once back in the office on 8/2/2023, Carey Bacon then puts a corrective action notice in the Plaintiff's file and commanded him to sign it @12:12am. The Plaintiff refused because he had no clue of what he was signing. Carey Bacon then proceeds to read the corrective action notice to the Plaintiff and once he finished, he commanded the Plaintiff again to sign the corrective action notice. The Plaintiff then denies the command for a second time because the information that Carey Bacon read, that was written by Stephen Charles was fraudulent. In retaliation to the Plaintiff declining his command twice of signing the falsely written corrective action notice, Carey Bacon told the Plaintiff, "That's fine but you are going to sit here and finish your statement and once you are done, and you are officially suspended and will be stripped of your badges.". The Plaintiff then proceeded to finish his statement. While the Plaintiff was typing his statement, Carey Bacon constantly asked the Plaintiff, "are you done with your statement", after specifying that his statement needs to be in detail because it will be submitted to HR. For every time Carey Bacon asked the Plaintiff if he was finished, the plaintiff responded, "No, you told me to be as detailed as possible.". Carey Bacon then clapped his hands at the Plaintiff and stated, "Okay Justin, you have had enough time, it's time to go.". The Plaintiff then says, "Why are you clapping at me Mr. Bacon, Can you please not do that?". Carey Bacon then

brings John Drake, who is one of his coworkers to assist in removing the Plaintiff from Nikya Cunningham's office and escorting him off the airport property. The Plaintiff was then removed from Nikya Cunningham's office without receiving any paperwork of his suspension and without finishing and submitting his statement. The Plaintiff did not finish and submit his statement to Nikya Cunningham until 8/2/2023 @3:37 AM and his badges were stripped by Carey Bacon and John Drake.

On 8/5/2023, the Plaintiff had emailed Kirk Pillner in regard to getting answers about his suspension that was given by Carey Bacon. Kirk Pillner ignored Plaintiff's email about his suspension and did not respond until 8/7/2023 @ 9:46 PM after plaintiff emailed Joanne D. Smith and cc'd Kevin V. Morrison, Stephanie A. Asbury, and John H. MacDonald on 8/7/2023 @ 1:56 PM. John H. MacDonald then responded to the Plaintiff's email on 8/7/2023 @ 2:07 PM. In the email sent to the Plaintiff, John H. MacDonald stated, "A member of the HR team here in Atlanta will be directly involved in reviewing your current employment status and the incident that lead to it. I will make sure that you are contacted by tomorrow at the latest.". With John H. MacDonald failing to meet the deadline that he had made about contacting the Plaintiff back about this situation, the plaintiff commenced to sending all emails and incidents that happens while working in E and B bag room, Plaintiff made sure to cc Stephanie A. Asbury, Kevin V Morrison and Joanne D Smith. Plaintiff was then contacted. By John H. MacDonald on 8/21/2023, 13 days after stating that he would call the Plaintiff back about the issue. While on the phone, MacDonald states that, "We are recommending your termination based on the information we have about the situation.". The Plaintiff asked MacDonald, "What was the threat that put the Plaintiff in this situation in the first place?". MacDonald then replies, "That information cannot be discussed.". MacDonald then hangs up on the Plaintiff. Macdonald then

emails the Plaintiff about the recommendation of termination and that he and Willma Abreu will be the HR contacts for this matter.

In the Plaintiff's statement sent to Nikya Cunningham, the Plaintiff asked, "Can you please send me the numbers to representatives at HR?". Nikya Cunningham ignored the request until she contacted the Plaintiff on 9/5/2023 about being terminated. When looking at the paperwork that Nikya Cunningham sent the Plaintiff, it stated that the Plaintiff was terminated on 9/1/2023. It was then that Nikya Cunningham gave the cell phone number of Willma Abreu to the Plaintiff, after already receiving the email from John H Macdonald. Plaintiff then contacts Willma Abreu trying to get information on the grounds of the termination. Willman Abreu states, "It's because of the threat you made.". Plaintiff then ask Willma Abreu about the threat that was made. Willma Abreu states, "That information cannot be discussed".

As stated in the summary, " At the end of the appeal, it was stated by Rice, "You will receive results in 30 days from the appeal date which is 10/10/2023". Rice also stated, "Do not call back, and someone will reach out to you".

After Rice failed to respond or have someone respond to the Plaintiff in the allotted time given, Plaintiff decided to go up the chain of command and email Melissa Seppings on 11/16/2023. Seppings is currently the Managing Director of the Equal Opportunity and Compliance section at Delta Air Lines. It was then Rice responds back to me on 12/4/2023, which is 8 days, excluding weekends and holidays, and 25 days, including weekends and holidays, after the deadline he had set. Rice states that my termination was appropriate after not giving me any reason why the Plaintiff was terminated in the first place.". This is an action of delayed retaliation by Terrance Rice because the Plaintiff took the protected action of climbing

the chain of command and emailing Melissa Seppings, because Terrance Rice failed to meet the deadline he told the Plaintiff.

### 3. The Plaintiff was terminated based off false information

With there not being any evidence of the alleged threat the Defendant's employees claimed the Plaintiff had made. All actions done to the Plaintiff were done under false pretenses. Every person the Plaintiff had asked the question, "What was the threat that he made?", the same response which was, "That information cannot be discussed" was given. The Plaintiff has the right to know what the threat was he allegedly made if he is being brought up on accusations that led to an undocumented suspension and overall termination. Even with Georgia being an At-Will employment state, Plaintiff being terminated based off false information was an extremely unethical decision. Especially since there were several instances of retaliation to the Plaintiff because of taking protected actions due his employee rights being violated serval times. When it comes to the alleged threat that the Plaintiff was falsely accused of, Carey Bacon stated that, "it's all about the discovery of the threat". With reporting the incident to Mark Moon, which is the next person to report to if Nikya Cunningham is not present, Nikya Cunningham should've heard from Mark Moon about Mr. France yelling at the Plaintiff violently because the incident was immediately reported to him once it happened. While being escorted in one of the company trucks, Carey Bacon and John Drake are covering each other's backs with false information after being questioned by the Plaintiff. Carey Bacon then states, "Their statements were written around the same time, but is then cut off by John Drake. John Drake states, "That everyone wrote their statement before they went home.". Carey Bacon then states, "Shortly before the Plaintiff, they wrote their statements, completed them and sent them in.". These are false statements stated

by John Drake and Carey Bacon because the alleged witnesses left around 9:30 PM & 10:30 PM and the Plaintiff left around 11:30 PM.

## REQUEST FOR ACTION

Given the above reasons, Plaintiff respectfully request that the Defendant's Motion to Dismiss to be denied in its entirety based on the outlined concerns above.

## CONCLUSION

Everything stated in this Motion of Opposition was stated in good faith, and majority of the statements stated in this Motion of Opposition can be proven with evidence once the Plaintiff is allowed to appear in federal court. Thank you for considering this Motion of Opposition.

Dated:        July 31, 2024

## CERTICATE OF SERVICE

I hereby certify that on July 31, 2024, I filed this document in person at the United States District Court Northern District of Georgia Atlanta Division, and also sent a copy of same document via U.S Mail to Defendant as follows:

Dominique Saint-Fort<br>
Littler Mendelson P.C<br>
3242 Peachtree Road N.E<br>
Suite 1200<br>
Atlanta, GA 30326. 1127<br>
Email: dsaintfort@littler.com

## CERTICATE OF SERVICE

I hereby certify that on July 31, 2024, I filed this document in person at the United States District Court Northern District of Georgia Atlanta Division, and also sent a copy of same document via U.S Mail to Defendant as follows:

Rachel P. Kaercher
Littler Mendelson P.C
3242 Peachtree Road N.E
Suite 1200
Atlanta, GA 30326. 1127
Email: rkaercher@littler.com
